[Sac. No. 1971. Department Two.—March 13, 1913.]

JAMES TURNER, Respondent, v. J. R. HITCHCOCK and E. RICHARDSON, Appellants.

SPECIFIC PERFORMANCE—VENDEES AGENTS FOR VENDOR—DEFAULT OF VENDEES.—In this action, in which the defendants sought to secure the specific performance by the plaintiff of a contract for the sale to them of certain lands, which was entered into at a time when they were acting as the agents for the plaintiff for the sale of such lands, it is held, upon a review of the evidence, that the defendants, and not the plaintiff, had defaulted under the contract, and that its specific performance was properly refused.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

C. L. Russell, for Appellants.

Bradley & Bradley, for Respondent.

MELVIN, J.—Plaintiff sued to quiet his title to certain real property in the county of Tulare.   Defendants by their answer admitted that the title was in plaintiff, but they set up a certain contract of sale and asked for a decree compelling plaintiff specifically to perform said contract.   From a judgment in favor of plaintiff the defendants appeal.

The agreement in question was made on the twenty-second day of July, 1907, between James Turner and the defendants who were operating under the name of Hitchcock & Company. By it Turner agreed to sell a tract of land described by metes and bounds, containing "500 acres more or less."   The sum of two thousand dollars was paid upon the execution of the contract and the receipt thereof was acknowledged in said agreement.   There were other covenants not material to this discussion.   All rights under this agreement were to lapse if Hitchcock & Company should fail to comply with the terms thereof.   Turner was bound to place in escrow with the Bank of Tulare at Tulare City such deeds to the property as the other parties to the agreement should request, executed to

such persons as they might designate. Time was made of the essence of the contract and the balance of the purchase price, $12,250, was made payable on or before the first day of November, 1907. The two thousand dollars paid on this contract were represented by a check drawn by one Rehard, and it was understood that Hitchcock & Company were to sell the land or a portion of it to him. On August 31, 1907, an amendment to the contract was executed whereby it was agreed that upon the payment of the purchase price the east line of the property described would be run so that just five hundred acres would be included in the tract sold, but the purchasers retained the right to buy the balance of the land contained in the original description for the price per acre at which they were entitled to purchase the five hundred acres. Previous to the execution of the contract of July 22, 1907, Hitchcock & Company, who were agents for the sale of Turner's land, made a contract as such agents with Rehard, whereby the latter was obligated to pay fifteen thousand dollars for three hundred acres of the land involved. This contract was dated July 20, 1907; the parties thereto were James Turner and Willis Rehard; the terms were two thousand dollars paid upon the execution of the agreement and the balance on or before November 1st; and a member of the firm of Hitchcock & Company executed it for said firm as the agents of Turner; yet it was not exhibited to Turner before the signing of the contract by which he agreed to sell five hundred acres to defendants, and he did not know of the existence of the prior agreement, as he testified, until Rehard exhibited it to him on November 15, 1907. It was stated by Turner on the stand, and denied by Richardson in his testimony, that the latter had agreed, upon the thirty-first day of August, to attend to the matter of getting an abstract of the property. Upon this conflict we must, of course, take the version which is in support of the judgment. Turner testified also that he went to Tulare late in September and also about October 20, 1907, ready on each date to carry out his part of the contract, but that on one occasion a postponement was caused by the fact that the abstract was not ready, and upon the other a delay was due to some objection to the title made by Rehard. There was sufficient evidence to justify the trial court in determining that the delay in preparing the deeds and placing them in

the bank was due as much to defendants as to plaintiff. Finally deeds to the property naming Rehard as grantee were deposited with the Bank of Tulare on November 1, 1907. These deeds were accompanied by a letter of instructions as provided in the contract.  Regarding this matter Turner testified that Richardson assisted in the preparation of the deeds and they were deposited pursuant to an arrangement that more time should be granted defendants and Rehard to make the final payment.  According to the testimony of Richardson this extension was to be until the fifteenth day of November, and the deeds were to remain in escrow until that time. While the transactions between Turner, Rehard and defendants were in progress, Turner notified Hitchcock & Company that he would accept only gold coin in payment of the balance on the contract of sale to them.  This, according to Turner, occurred on October 29th, but Richardson said it was on November 1, 1907.  Richardson also testified that the verbal agreement of November 1st to extend the option to November 15th was made for the purpose of giving his firm and Rehard an opportunity of raising the necessary amount of gold coin.  On November 16, 1907, Turner wrote to Hitchcock & Company: "I have decided not to extend the time for meeting the payments on the land deal."  On November 30th he wrote them again saying: "E. P. Foster writes me that you are making arrangements to meet the payments on the land transaction as soon as the so-called holidays are over, but that it will cost you considerable.  Now, I feel it my duty to let you know that I do not intend to deliver a deed to you or any one else for the 220 acre tract on the south part of the land.  If Mr. Rehard still wants the 300 acre tract and can arrange so as to pay for it in a reasonable time and you are satisfied with your percentage of $750.00 for selling, we can settle the whole matter at once, otherwise it will be no sale." On November 15th the deeds had been withdrawn from the Bank of Tulare by plaintiff.

It is a fact that from October 31st to December 21st, 1907, the Governor of California declared a series of holidays.  December 22d was a Sunday and on December 23, 1907, plaintiff redeposited deeds to the property in the Bank of Tulare and notified Hitchcock & Company of that fact.  The deeds were left in escrow until midnight of December 23d, but no

offer of payment was made. In January, 1908, Turner repaid Rehard the two thousand dollars theretofore paid by defendants and was released by the latter from all obligations on the contract of July 20, 1907, which defendants had made as Turner's agents. On December 23d, before Turner redeposited the deeds, he was requested by Hitchcock & Company in writing to make a new deed of the land to one Giannini. This he refused to do, telling them that they had already bound him to Rehard.

Upon these facts defendants contended: 1. That their time to fulfill the contract of July 22d was extended by the holidays; 2. That they could not be placed in default until after the required deeds had been put in escrow; 3. That no tender of money was required until the deeds were thus in escrow; 4. That Turner's letter of November 30th was a repudiation of the contract which excused defendants from the duty of being ready to pay the balance due thereunder on the first day following the series of holidays; and 5. That in any event, they have never been in default because of Turner's refusal to execute and place in escrow a deed to the property naming Giannini as grantee.

If we concede the effect of the holidays to have been that for which appellants contend, we do not think they can properly maintain that plaintiff was in default on December 23, 1907. Part of the difficulty in determining their rights arises from their protean position, now as agents for Turner assuming to sell his land, and accepting a deposit on his behalf, and, again, using that deposit as an initial payment upon a contract whereby they were to acquire the same property and some other land for less than the amount for which, as Turner's agents, they had agreed to sell the three hundred acres to Rehard. We do not mean to impute wrong motives to them. None are charged in the pleadings. Doubtless it was understood that they were to subdivide and sell the property at a profit to themselves. But by concealing from their principal that they had bound him to the sale of three hundred acres to Rehard, they placed him in the position of having promised to sell that tract to Rehard and to them. The only way in which they could possibly reconcile these transactions, if at all, was by requiring, under their contract of July 22d, that a deed to Rehard for the three hundred acres

should be put in escrow. This they did, and Turner prepared the deeds accordingly. They cannot complain, therefore, if Turner, having been informed of the contract with Rehard and of the acceptance in his behalf of two thousand dollars as a payment thereon, refused again to complicate the situation by deeding the property to Giannini without a release from Rehard. He did all that he could be required to do when he placed the original deeds in escrow on the first business day following the holidays. Appellants may not complain if he insisted upon construing the two contracts together. They had created that situation.

But they say that by his letter of November 30th he had repudiated the contract of July 22d, and that they were therefore excused from being ready to perform on December 23d (citing Civ. Code, sec. 1440). We do not think his letter placed them in a position to sit idly by and wait for him to put deeds in escrow. The only effect of the cited section would have been to enable them to enforce the contract without waiting for him to deposit the deeds (*Remy* v. *Olds,* 88 Cal. 541, [26 Pac. 355]), yet up to May 13, 1910, when this action was commenced, they had taken no steps to do so. They testified, however, that they *were* ready to perform on December 23d, yet they did not either accept the only deposit of deeds which, under the circumstances they had the right to demand, nor seek to put Turner to the election of refusing or accepting the contract price. But as a matter of fact the evidence fails to show that they were ready to perform in case a deed was made to Giannini. According to the testimony of Mr. Hitchcock, they were ready to pay but $12,250. Surely they had no right to the credit of two thousand dollars unless they could assure Turner that Rehard had been compensated for his payment of that amount and had relieved Turner from all liability under the contract with him. They could not utilize the check from Rehard to bind the bargain of July 20th and also as a payment on the sale to Giannini. In other words, they could not obtain an advantage as vendees by ignoring their obligations as agents. The trial court correctly concluded that defendants were not entitled to a decree of specific performance of their contract.

It was proper to ask defendant Richardson on cross-examination where he got the two thousand dollars which he paid

plaintiff when the contract of July 22, 1907, was executed. The court was entitled to know all of the circumstances connected with and surrounding that transaction. For the same reason the contract of July 20th under which Rehard paid the two thousand dollars was admissible.

The judgment appealed from is affirmed.

Henshaw, J., and Lorigan, J., concurred.